**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| GJON NDRECAJ, | : | **Hon. Freda L. Wolfson** |
| | : | |
| Petitioner, | : | |
| | : | Civil No. 12-4176 (FLW) |
| v. | : | |
| | : | |
| ERIC HOLDER, et al., | : | **OPINION** |
| | : | |
| Respondents. | : | |
| ———————————————— | : | |

**APPEARANCES**:

      GJON NDRECAJ, A 095 467 689
      Monmouth County Correctional Institution
      1 Waterworks Road
      Freehold, New Jersey 07728
      Petitioner Pro Se

**WOLFSON**, District Judge:

On July 9, 2012, Gjon Ndrecaj, a native of Croatia, filed a Petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention in the custody of the Department of Homeland Security ("DHS") on the grounds that it is not statutorily authorized and violates due process guaranteed by the Fifth Amendment.[1]  This Court will summarily dismiss the Petition because Petitioner has not alleged facts showing:  (1) he has been detained for more than six months after the beginning of the removal period, and (2) there is "good reason to believe that there is no significant likelihood of removal [to Argentina] in the reasonably foreseeable future,"

---

[1] Petitioner did not pay the $5 filing fee or apply to proceed in forma pauperis.  This Court will therefore order him to pay the filing fee or submit an application to proceed in forma pauperis within 30 days.  See 28 U.S.C. § 2254 Rule 3(b) 2004 advisory committee's note.

as required by <u>Zadvydas v. Davis</u>, 533 U.S. 678, 701 (2001), to make the government respond with evidence sufficient to rebut that showing.

## I.  BACKGROUND

Petitioner is a native and citizen of Croatia.  He alleges that on December 4, 2006, an Immigration Judge ordered his removal, and that on November 4, 2008, his appeal was dismissed. He further alleges that DHS took him into custody on March 26, 2012, and that he "has since then remained in custody till this date for a total of approximately 3 months.  With no foreseeable date for his removal, and is faced with indefinite detention until removal is or if ever possible."  (Dkt. 1 at 3.)  He seeks an order reinstating his "supervised release until a travel document is actually in [DHS's] possession and all other means are in place [i]n order to carry out Petitioner's Removal." (<u>Id.</u> at 6.)

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of the DHS at the time he filed his Petition, <u>see</u> <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998), and he asserts that his

2

detention is not statutorily authorized and violates his constitutional rights.  See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir. 2005).

B.  Standard of Review

      Habeas Rule 4 requires a district court to examine a habeas petition prior to ordering an answer and to dismiss the petition if the petitioner is not entitled to relief.  See 28 U.S.C. § 2254 Rule 4, applicable through Rule 1(b).  Habeas Rule 4 provides in relevant part:

> The clerk must promptly forward the petition to a judge . . . and the judge must promptly examine it.  If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

28 U.S.C. § 2254 Rule 4, applicable through Rule 1(b).

      "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."  McFarland v. Scott, 512 U.S. 849, 856 (1994); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985).  Dismissal without the filing of an answer or the State court record is warranted "if it appears on the face of the petition that petitioner is not entitled to relief."  Id.; see also McFarland, 512 U.S. at 856; United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief").

C.  Legality of Detention

      The Immigration and Nationality Act ("INA") authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States.  See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on

whether the alien is to be removed from the United States . . ."). <u>See</u> <u>Demore v. Kim</u>, 538 U.S. 510 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").

Once an alien's order of removal is final, the Attorney General is required to remove him or her from the United States within a 90-day "removal period."  <u>See</u>  8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').")  8 U.S.C. § 1231(a)(1)(A).  This 90-day removal period begins

> on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section § 1231(a)(2) requires the DHS to detain aliens during this 90-day removal period. <u>See</u> 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien").  However, if the DHS does not remove the alien during this 90-day removal period, then § 1231(a)(6) authorizes the DHS to thereafter release or continue to detain the alien.  Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney

4

General to be a risk to the community or unlikely to comply with the
order of removal, may be detained beyond the removal period and, if
released, shall be subject to the terms of supervision in paragraph
(3).

8 U.S.C. § 1231(a)(6).

In <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) does

not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but

"limits an alien's post-removal-period detention to a period reasonably necessary to bring about

that alien's removal from the United States." <u>Zadvydas</u>, 533 U.S. at 689.  To guide habeas courts,

the Supreme Court recognized six months as a presumptively reasonable period of post-removal-

period detention.  <u>Id.</u> at 701.

> After this 6-month period, once the alien provides good reason to
> believe that there is no significant likelihood of removal in the
> reasonably foreseeable future, the Government must respond with
> evidence sufficient to rebut that showing.  And for detention to
> remain reasonable, as the period of prior postremoval confinement
> grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink.  This 6-month presumption, of
> course, does not mean that every alien not removed must be released
> after six months.  To the contrary, an alien may be held in
> confinement until it has been determined that there is no significant
> likelihood of removal in the reasonably foreseeable future.

<u>Zadvydas</u>, 533 U.S. at 701.

In this case, Petitioner asserts that his order of removal[2] became administratively final

when the BIA affirmed the order of removal on November 4, 2008.  To be sure, an order of

removal becomes "final upon the earlier of - (i) a determination by the Board of Immigration

---

[2] "The term 'order of [removal]' means the order of the special inquiry officer, or other
such administrative officer to whom the Attorney General has delegated the responsibility for
determining whether an alien is [removable], concluding that the alien is [removable] or ordering
[removal]."  8 U.S.C. § 1101(a)(47)(A).

Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."  8 U.S.C. § 1101(a)(47)(B).  See Giraldo v. Holder, 654 F.3d 609, 611 (6th Cir. 2011); Hakim v. Holder, 611 F.3d 73, 77 (1st Cir. 2010); Chupina v. Holder, 570 F.3d 99, 103 (2d Cir. 2009); United States v. Calderon-Minchola, 351 Fed. App'x 610, 611 n.1 (3d Cir. 2009).  Since 8 U.S.C. § 1231(a)(1)(B)(i) provides that the removal period begins on the "date the order of removal becomes administratively final," Petitioner's removal period began on November 4, 2008, when the BIA affirmed the Immigration Judge and his order of removal became administratively final.

However, Petitioner expressly asserts that DHS did not take him into custody until March 26, 2012.  Accordingly, his allegations show that he has not been detained beyond the six-month presumptively reasonable period of detention under § 1231(a)(6), as interpreted by Zadvydas.  Moreover, Petitioner "has made no showing whatever that there is 'no significant likelihood of removal in the reasonably foreseeable future.'"  Encarnacion-Mendez v. Attorney General of U.S., 176 Fed. App'x 251, 254 (3d Cir. 2006).  As the Third Circuit explained,

> Once the six-month period has passed, the burden is on the alien to 'provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . .' Zadvydas v. Davis, 533 U.S. 678, 701 . . . (2001).  Only then does the burden shift to the Government, which 'must respond with evidence sufficient to rebut that showing.' Id.

Barenboy v. Attorney General of U.S., 160 Fed. App'x 258, 261 n.2 (3d Cir. 2005).

Because Petitioner does not allege facts showing that the presumptively reasonable six-month period of detention has expired, and because Petitioner alleges no facts to substantiate his conclusion that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," as required by Zadvydas, 533 U.S. at 701, he has not shown

that his detention is statutorily unauthorized or violates due process.  See, e.g., Joseph v. United States, 127 Fed. App'x 79, 81 (3d Cir. 2005) (affirming dismissal of § 2241 petition challenging detention pursuant to § 1231(a)(6):  "Under Zadvydas, a petitioner must provide 'good reason' to believe there is no likelihood of removal, 533 U.S. at 701, and Alva has failed to make that showing here."); Soberanes v. Comfort, 388 F. 3d 1305 (10th Cir. 2004) (affirming dismissal of § 2241 petition challenging detention pursuant to § 1231(a)(6) where petitioner failed to provide good reason to believe that there is no likelihood of removal); Akinwale v. Ashcroft, 287 F. 3d 1050, 1052 (11th Cir. 2002) ("in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"); Pierre v. Weber, 2010 WL 1492604 (D.N.J. April 14, 2010) (summarily dismissing § 2241 petition as premature under Zadvydas and § 1231(a)(6) where petitioner filed petition during presumptively reasonable six-month period after removal became final and failed to assert facts showing his removal is not reasonably foreseeable).  This Court will dismiss the Petition for failure to assert that Petitioner is detained contrary to the laws, the Constitution or treaties of the United States.[3]  Id.

_____

[3] The dismissal is without prejudice to the filing of a new § 2241 petition (in a new case) in the event that Petitioner can allege facts showing that he has been detained for more than six months since March 26, 2012, and there is good reason to believe that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.  See Akinwale, 287 F. 3d at 1052 ("Because circumstances may ultimately change in [petitioner's] situation, we affirm the dismissal [of his habeas petition] without prejudice to [his] ability to file a new § 2241 petition in the future").  In addition, if Petitioner believes he is unlikely to be removed in the near future, he may request the DHS to review his situation.  See 8 C.F.R. § 241.13(d)(1) ("An eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable

(continued...)

### III.  CONCLUSION

The Court will dismiss the Petition.


_s/Freda L. Wolfson_
**FREDA L. WOLFSON, U.S.D.J.**

DATED:   _July 31, 2012_

---

[3](...continued)
future. The alien may submit whatever documentation to the HQPDU he or she wishes in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future").